WARREN S. PRATT & another vs. BUILDING INSPECTOR OF
GLOUCESTER.

Essex.   April 9, 1953. — July 1, 1953.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

Zoning.  Gloucester.  Stable.

A provision of the zoning ordinance of the city of Gloucester, that no
permit for any of a number of more or less undesirable uses of property
should be issued except with the written approval of the municipal
council after notice and hearing and subject to such conditions as the
council might impose, was intended to furnish an additional safeguard
respecting such uses in districts where they were otherwise permitted
and did not empower the council to allow them in districts where
they were otherwise forbidden.   [345]

Under the zoning ordinance of the city of Gloucester, adopted in 1927
and "reënacted" in 1950, including in the list of uses permitted in
the single residence districts "one-family detached houses" but not
stables, which were permitted in the business districts, nor accessory
uses, the maintenance in a single residence district of a stable wherein
were kept two horses for show purposes and as family pets and not
for commercial purposes was not impliedly permitted as an incident
of a single family dwelling and was forbidden.   [345–347]

PETITION for a writ of mandamus, filed in the Superior
Court on October 15, 1952.

The first prayer of the petition was that the writ issue
directing the respondent building inspector "to forbid and
restrain the maintenance of" the stable mentioned in the
opinion.

Following hearing by Morton, J., a judgment of dismissal
was entered.   The petitioners appealed.

Donald J. Ross, for the petitioners.

Carlton W. Wonson, City Solicitor, for the respondent,
submitted a brief.

QUA, C.J.   This petition for a writ of mandamus is
brought by two owners of residential property in Gloucester

to compel the building inspector to perform his duty to enforce the city's zoning ordinance by causing the intervener, one Milne, to cease maintaining a stable on his land which adjoins the residence of one of the petitioners and is near that of the other. *Sunderland* v. *Building Inspector of North Andover,* 328 Mass. 638. The trial judge dismissed the petition.

Section 3 of the ordinance lists the uses of property permitted in a "Single Residence District." The first use listed is "a. One-family detached houses." Then follow uses such as parks, farms, churches, and others not here pertinent. Stables are not listed. No mention is made of accessory uses. Stables are listed in § 8 among the uses permitted in business districts, but their use is made subject to § 19 which provides that no permit for any of a large number of more or less undesirable uses, including stables, shall be issued by the building inspector except with the written approval of the municipal council after notice and hearing and subject to such conditions as the council may impose.

Milne has obtained the approval of the municipal council for his stable after hearing in accordance with § 19, and the respondent has issued a permit to him. The respondent contends that § 19 gives the council power to allow permits for any of the undesirable uses there mentioned in any district, including a single residence district, without regard to the restrictions imposed by the ordinance in such district. We cannot so read § 19. We think that section was designed to provide the additional safeguard of council approval for certain undesirable uses in districts where they were otherwise permitted and not to break down the plan of the ordinance by allowing the council to introduce such uses into otherwise forbidden districts.

It is plain that Milne's stable is not itself a "One-family detached" house. It is therefore not allowable in a single residence district unless it can come in on the theory that it is merely an incident or accompaniment of such house and impliedly permitted in spite of the fact that the ordinance

says nothing about accessory uses. The record informs us that the zoning ordinance was "adopted originally in 1927 and reënacted in 1950."

In the stable and in an open yard outside of the stable structure Milne keeps two "nice appearing" horses for show purposes and family pets and not for commercial use. The stable is "maintained in a substantially clean and sanitary manner as such." It is on land "in view of" and higher than the properties of the petitioners and "sloping in their direction." The petitioners and others in the vicinity have noted stable odors and other odors usually associated with horses, the degree varying with wind and atmospheric conditions. They also hear the horses whinnying and stamping their hoofs. The portion of the petitioner Pratt's house nearest the area used by the horses is twenty-two feet therefrom. The stable structure is about one hundred feet distant. The use of Milne's land for horses did not begin until 1951.

Even though the ordinance does not expressly permit accessory uses, it must of course be construed in a reasonable manner, always with regard to the obvious intent of maintaining the character of the neighborhood as appropriate for one family detached houses. For example, we have no doubt that a part of a lot might be devoted to a garden for use in connection with the house. But when we begin to deal with a stable, especially since it involves a building on the land which is not a dwelling house, we must consider in what direction we are being led. If Milne can keep two horses, can he keep three or five for the same purposes? Could he build a cow barn and keep a couple of cows for family use? How about a hen house and yard? If each of these would be comprehended within use of land for a one family detached house, could Milne maintain all three at the same time? When the question arises as to uses which in general tend to become deleterious to a neighborhood of homes it would seem that the most liberal test open to us must be whether the use is one that is so necessary in connection with a one family detached house or so commonly to be expected with such a house that it cannot be sup-

posed the ordinance was intended to prevent it. We do not believe that a stable for horses for family use could pass that test either as of 1927 when the ordinance was originally adopted or as of 1950 when it was reënacted.

If the same question were presented as of the year 1900, for example, it is possible that a different answer would be required.

The judgment is reversed and judgment is to be entered in accordance with the first prayer of the petition.

*So ordered.*