# IN THE SUPREME COURT OF IOWA

No. 65 / 04-1554

Filed May 26, 2006

**CITY OF OKOBOJI, IOWA,**

Appellant,

vs.

**OKOBOJI BARZ, INC., d/b/a**
**OKOBOJI BOATS and LEO PARKS, JR.,**

Appellees.

Appeal from the Iowa District Court for Dickinson County, John P. Duffy, Judge.

The city appeals an adverse judgment denying its request for an injunction to enjoin a bar from operating within the city limits. **REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Michael J. Chozen of Chozen & Saunders, Spirit Lake, for appellant.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, and Phil C. Redenbaugh of Phil C. Redenbaugh, P.C., Storm Lake, for appellees.

**WIGGINS, Justice.**

In this appeal, we must decide whether the proposed operation of a bar on lakefront property constitutes an unlawful expansion of a nonconforming use under a city's zoning ordinance and a violation of the special use permits granted by the board of adjustment. The district court determined the proposed use of the property for a bar did not violate the city zoning ordinance or the special use permits. Because we disagree with the district court's determination, we reverse the judgment of the district court and remand the case for the court to enter a permanent injunction enjoining the owner and his corporation from using the property as a bar.

### I. Background Facts and Proceedings.

The property in question in this case is located on the lakeshore of Smith's Bay on West Lake Okoboji. A marina has been located on the property since the 1890's. Until the mid-1970's, the property was operated as two separate marinas with different owners. One property was known as the Cove and the other as Okoboji Boats. The surrounding neighborhood is primarily residential, with some commercial activity.

In 1972, the City of Okoboji (City) enacted a zoning ordinance. Under the ordinance, the marinas were zoned lakeshore residential. Lakeshore residential permits single-family homes and prohibits commercial uses. Okoboji Zoning Ordinance art. VII, § 2(A)(1) (1995) (originally codified in 1972). Accordingly, the Cove and Okoboji Boats became nonconforming uses. The minutes from the Okoboji planning and zoning commission meeting where the commission discussed the ordinance reflect the commission's

> suggest[ion] that these [nonconforming uses] be given a perpetual special permit to continue their respective businesses regardless of any type of disaster that may destroy the entire operation [contrary to a provision in the ordinance

prohibiting rebuilding if such a use is damaged more than fifty percent of its replacement value. The commission noted it] should be stipulated, however, that the permit is limited to the specific operation or business for which it was originally intended.

In 1973, the owner of Okoboji Boats filed an application for a special use permit stating:

> We request that the provision of Ordinance No. 63 stating that if a non-conforming business is destroyed beyond 50% of replaceable value, the business may not be rebuilt, be waived, as pertains to the business known as "Okoboji Boats." The business being a sales, service, and storage facility for boats.

The Okoboji board of adjustment granted the permit as requested.

Around the same time, the owner of the Cove filed an application for a special use permit. The application stated:

> I request that the provisions of Art. IV, Sec. 4, par. B be waived so that a non-conforming use of a building destroyed or damaged more than 50% of its then replacement value could be restored; also I request that the provisions of Art. IV, Sect. 4 which states that no building or land devoted to a use not permitted by this ordinance in a residential district in which such building or land is located, except when required by law, shall be enlarged, extended, constructed, reconstructed, substituted or structurally altered, unless the use thereof is changed to a use permitted in the district in which such building, structure or premises is located, be also waived. The Cove is such a business involved in sales, rental, service and storage of boats, snowmobiles and related items.

The board granted the permit specifying in part

> [t]hat all objections be overruled and the permit application be approved subject to the following restrictions: That the proposed building be utilized for only boat sales, service, storage facilities, and related various business, and further provided that the proposed building be no higher than specified in the attached site plan, which is 15' above street grade, adequate parking as defined in Ord. 63 and 10' side yards.

In 1975, the two properties began operating as a single marina known as Okoboji Boats. The hours of operation were typically 8 a.m. to 5 p.m., with the gas dock sometimes operating until 8 p.m. Around this time, the

City issued a building permit to the marina for some expansion and remodeling. In addition, the marina eventually began selling beer intended for consumption off the premises as well as soda, snack foods, and microwavable sandwiches. The marina also expanded its inventory of boating equipment, apparel, and accessories.

In January 2001, Leo Parks, Jr. purchased Okoboji Boats. Parks leased a portion of the marina during that summer to an individual who operated a business that included the sale of carryout broasted chicken. The broasted chicken operation brought a myriad of complaints from the neighbors. With the support of numerous property owners in the neighborhood, the City filed a petition for declaratory judgment and injunctive relief, claiming the operation of the chicken business was contrary to the zoning ordinance. The court denied the City's request for a temporary injunction. The City dismissed the case. The chicken business eventually closed.

In September 2003, a corporation controlled by Parks, Okoboji Barz, Inc., leased the marina property. In October, Parks' corporation applied for an on-premises class C commercial liquor license for the marina. This license allows the licensee to sell liquors, wine, and beer by the drink for consumption on the premises. Iowa Code § 123.30(3)(*c*) (2003). Parks' proposed operation of a bar contemplates serving alcohol inside and outside of both buildings on the premises, year-round and every day of the week. Parks contends a bar "fills the piece of the puzzle to make a modern day marina complete."

Parks intends to operate a bar at this marina under the same business model he is running at a different marina he owns. At the other marina, Parks operates a tiki bar known as the Barefoot Bar. The revenue

from the Barefoot Bar contributes approximately one and a half percent of the marina's gross sales. The Barefoot Bar is not intended to be a late night bar, but rather a "lakeside sunny day bar." It is usually open to 10:30 p.m., but on some occasions it remains open until midnight. The bar's activities include karaoke, live music, hog roasting, and monthly full moon parties.

The City denied Okoboji Barz, Inc.'s application for a liquor license on the grounds the "operation of a tavern/restaurant on premises represents a substantial change in the nature and character of the use permitted under the special use permit."

In November, the City filed a petition against Okoboji Barz, Inc., d/b/a Okoboji Boats, and Parks for declaratory judgment and injunctive relief. The petition was filed in light of Okoboji Barz, Inc.'s appeal to the alcoholic beverages division of the Iowa department of commerce from the City's denial of its application for a liquor license. The City sought a temporary and permanent injunction against the operation of a tavern or bar on the marina property as such operation constituted an unlawful expansion of a nonconforming use, as well as rulings that such operation violated conditions of a special use permit, allowing the board of adjustment to revoke the permit. The district court issued a ruling denying the City's requested relief. The City appeals.

## II. Issues.

One issue raised on appeal by the City is whether the district court erred when it ruled that the operation of a bar on the marina property does not violate the City's zoning ordinance and the special use permits issued by the board of adjustment. The City also asks us to decide if the board of adjustment may revoke one of the special use permits.

### III. Scope of Review.

The district court tried the City's petition for declaratory judgment and injunctive relief as an equity action. Therefore, our review is de novo. *Perkins v. Madison County Livestock & Fair Ass'n*, 613 N.W.2d 264, 267 (Iowa 2000). Under this review, we give weight to the fact findings of the district court, especially as to the credibility of witnesses, but we are not bound by them. *Id.*

### IV. Analysis.

*A. Did the district court err when it ruled that the operation of a bar on the Okoboji Boats property does not violate the City's zoning ordinance and the special use permits issued by the board of adjustment?*

To decide this appeal, we must consider the interpretation and application of the Okoboji zoning ordinance. "In interpreting ordinances it is appropriate to apply the general rules of construction for statutes." *Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996). "We resort to 'the rules of statutory construction *only* when the terms of [a] statute are ambiguous.'" *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006) (alteration in original). Ambiguity exists if reasonable persons can disagree on the meaning of a statute. *Id.* An ambiguity may arise from the meaning of particular words or from the general scope and meaning of a statute in its totality. *Id.*

We have stated:

> The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). Zoning restrictions are construed strictly to favor the free use of property and will not be extended by implication or interpretation. *Ernst v. Johnson County*, 522 N.W.2d 599, 602 (Iowa 1994). The assessment of an ordinance requires consideration in its entirety so that the ordinance may be given its natural and intended meaning. *Kordick Plumbing & Heating Co. v. Sarcone,* 190 N.W.2d 115, 117 (Iowa 1971).

When the City enacted its zoning ordinance in 1972, it zoned the marina properties in the L-R Lakeshore Residential District. This district only allows single-family dwellings on each lot or building site. Okoboji Zoning Ordinance art. VII, § 2(A)(1). After the City enacted its zoning ordinance, the marina properties thus became nonconforming uses. *See Perkins*, 613 N.W.2d at 270 (stating a nonconforming use is one lawfully in existence when a zoning restriction became effective and has been permitted to continue to exist). As to nonconforming uses, the City's zoning ordinance provides:

> Within the districts established by this Ordinance or by amendments which may later be adopted, there exist lots, structures, buildings and uses which were lawful before this ordinance was effective or amended, but which would be prohibited, regulated or restricted under the provisions of this Ordinance or future amendment, the intent of this Ordinance is to permit these nonconformities to continue until they are removed, but not to encourage their survival. It is further the intent of this Ordinance that nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district.

Okoboji Zoning Ordinance art. IV, § 3.

> "A party who asserts a nonconforming use has the burden to establish the lawful and continued existence of the use, and once the preexisting use has been established by a preponderance of the evidence, the burden is on the city to

prove a violation of the ordinance by exceeding the established nonconforming use."

*City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 186 (Iowa 1989). In evaluating whether changes in such nonconforming uses are permissible, we have stated:

> A property owner may lose the protection of a nonconforming-use status when the property owner exceeds the established nonconforming use. Thus, "[e]nlargements or extensions of non-conforming uses are not allowed." This court has explained the rationale underlying this principle as follows: "The prohibition against expanding or enlarging a non-conforming use defends against the growth of a pre-existing aggravation. That pre-existing aggravation, the non-conforming use, survives as a matter of grace. The public is not required to expand upon that grace to its increasing aggravation." Landowners are given some latitude, however, and may change the original nonconforming use "if the changes are not substantial and do not impact adversely on the neighborhood."

*Perkins*, 613 N.W.2d at 270 (alteration in original) (citations omitted). Reasonable and normal accessory uses are usually permitted in connection with nonconforming uses. 8A Eugene McQuillin, *The Law of Municipal Corporations* § 25.209 (3d ed. rev. 2003). The use made of the land at the time the ordinance became effective is the standard we use to determine whether there is an unlawful enlargement of a nonconforming use. *City of Cent. City v. Knowlton*, 265 N.W.2d 749, 754 (Iowa 1978).

We must also consider the uses allowed under the special use permits to determine whether Parks' proposed bar is an allowable use. A special use permit "allows property to be put to a purpose which the zoning ordinance *conditionally* allows." *Buchholz v. Bd. of Adjustment of Bremer County*, 199 N.W.2d 73, 75 (Iowa 1972); *see also* Iowa Code § 414.7 (allowing the board of adjustment to make special exceptions to ordinances).

Prior to the issuance of the special use permits, the owners of the two properties operated each property as a separate marina. The marinas did not sell food or alcoholic beverages. Although the special use permit issued to the old Okoboji Boats marina waived the provision of the zoning ordinance which would not allow reconstruction if the business was destroyed beyond fifty percent of its replacement value, the permit did not expand the existing nonconforming use. The special use permit only allowed the owner to operate the business on the property as a sales, service, and storage facility for boats.

The special use permit issued for the old Cove marina not only waived the reconstruction restriction, but it also allowed the owner to build on the property with certain restrictions. The Cove's special use permit did not expand the property's existing nonconforming use. By its terms, the special use permit stated "the proposed building be utilized for only boat sales, service, storage facilities, and related various business." The use of the word "business" in the permit refers to activity directed towards the sale, service, and storage of boats. *See Webster's Third New International Dictionary* 302 (unabr. ed. 2002) (defining "business" as "activity directed toward some end"). This definition is consistent with the then owner's application for the special use permit that stated "[t]he Cove is such a business involved in sales, rental, service and storage of boats, snowmobiles and related items."

Thus, the special use permits issued by the board of adjustment in 1973 did not expand the uses allowed by the property owners under the zoning ordinance's nonconforming use provisions.

It is uncontested that the prior marina owners expanded the operation of the marina to include the sale of beer intended for off-premises

consumption, soda, snack foods, microwavable sandwiches, and boating equipment and accessories. These items, however, are related to the sales and service of boats because boat owners use these items when they are on their boats. The prior owners did not use the property as a bar for on-premises consumption of alcoholic beverages. The prior owners did not have live entertainment, karaoke, hog roasts, or full moon parties. The prior owners only operated the marina from 8 a.m. to 5 p.m., with a gas pump attendant on duty until 8 p.m.

Parks acknowledges the proposed bar at Okoboji Boats would be similar in operation to the bar at his other marina. This means the Okoboji Boats marina would be open longer hours than under the prior owners and host activities such as karaoke, live music, hog roasting, and monthly full moon parties. Such activities change the nature and character of the nonconforming use. Accordingly, we cannot consider a full-fledged bar to be merely an accessory use to the operation of a marina. Instead, the operation of a bar is a change in use that is substantially different from the use the marina properties had at the time of the adoption of the zoning ordinance. Thus, the proposed bar constitutes an unlawful expansion of a prior nonconforming use. *See Perkins*, 613 N.W.2d at 270-71 (finding an enlarged racetrack and the figure-eight racing for which it was used was substantially different from the previous rodeo-type arena and the events held in it, in view of the new racetrack's size, character, form, and different neighborhood effect, causing it "to lose the protection of the nonconforming use provisions of the ordinance"); *Waukesha County v. Pewaukee Marina, Inc.*, 522 N.W.2d 536, 540 & n.3 (Wis. Ct. App. 1994) (finding a marina owner's addition of a retail store and place for lounging and entertainment as well as sale of boats, boat lifts, and piers resulted in a change of the prior

nonconforming use consisting of a dry-docking and wet-docking facility with fuel and bait services; the court rejected the notion of "once a marina, always a marina, even though marina business itself is transformed").

Therefore, the district court should have granted the City's request for a permanent injunction enjoining Okoboji Barz, Inc., d/b/a Okoboji Boats, and Parks from operating the proposed bar on the premises.

*B. May the board of adjustment revoke one of the special use permits?*

The City's zoning ordinance provides:

> The special permit issued may include time limits, and other conditions or safeguards deemed necessary or appropriate by the Board [of Adjustment]. Violations of such conditions and safeguards shall be deemed a violation of this Ordinance and punishable under the provisions of this Ordinance. In addition, the special permit in connection with such violation shall be subject to revocation by the Board.

Okoboji Zoning Ordinance art. XI, § 6(5). The legislature granted the board of adjustment jurisdiction over special use permits, not the city council. Iowa Code §§ 414.7, 414.12; *see also Holland v. City Council of Decorah*, 662 N.W.2d 681, 688 (Iowa 2003) (stating "[t]o the extent the council has claimed authority to grant the fill permit in this case, it has [unlawfully] diminished the jurisdiction of the board of adjustment").

As of the date of trial, the board of adjustment had made no determination whether to revoke the special use permit granted to the old Cove property. Until the board takes action under the City's zoning ordinance, there is no justiciable controversy. *See Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 474 (Iowa 2004) (finding for purposes of a declaratory judgment there was no justiciable controversy prior to a final decision of other governing bodies involved in the case). Therefore, we will not address this issue on appeal.

**V. Disposition.**

Because the proposed use of the property as a bar is an unlawful expansion of a prior nonconforming use under the zoning ordinance and the special use permits granted by the board of adjustment, Parks' proposal to use the premises as such is illegal. Accordingly, the district court should have granted the City's request for a permanent injunction enjoining Okoboji Barz, Inc., d/b/a Okoboji Boats, and Parks from operating a bar on the premises. Therefore, we reverse the judgment of the district court and remand the case for the court to enter a permanent injunction consistent with this opinion.

**REVERSED AND CASE REMANDED WITH DIRECTIONS.**