# IN THE SUPREME COURT OF IOWA

No. 131 / 06-0269

Filed March 14, 2008

**CITY OF OKOBOJI, IOWA**,

    Appellee,

vs.

**OKOBOJI BARZ, INC.** d/b/a **O'FARRELL SISTERS**
and **LEO PARKS, JR.**,

    Appellants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dickinson County, David A. Lester, Judge.

City of Okoboji seeks further review of court of appeals decision reversing district court's grant of declaratory and injunctive relief regarding a nonconforming restaurant. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED**.

Phil C. Redenbaugh of Phil Redenbaugh, P.C., Storm Lake, for appellants.

Michael J. Chozen of Chozen & Saunders, Spirit Lake, for appellee.

**CADY, Justice.**

In this appeal, we must decide whether a city ordinance prohibits the sale and service of alcoholic beverages in conjunction with the operation of a restaurant as a nonconforming use. We conclude the sale and service of alcoholic beverages would not alone violate the ordinance. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand.

## I. Background Facts and Proceedings.

Edna Mae, Arlene, and Fern O'Farrell opened a small, family-oriented restaurant in the City of Okoboji in 1958 called "O'Farrell Sisters." The three sisters successfully operated O'Farrell Sisters for decades, and other family members later continued the restaurant operation. The restaurant maintained its quaint appearance over the years and was particularly recognized for its pancake breakfast. O'Farrell Sisters remains a popular dining landmark in the great lakes area today under the same name.

The restaurant is located on Lakeshore Drive in a small building situated on a triangular-shaped lot. It overlooks Smith's Bay on West Lake Okoboji. The restaurant building occupies a large portion of the lot. The dining area of the restaurant is 740 square feet and accommodates table seating for approximately fifty patrons. The restaurant also has an eight-foot counter with five stools. A fish-shaped "O'Farrell Sisters" sign is located on the roof of the building. The word "beer" is inscribed on the sign. When the restaurant first opened, alcoholic beverages were sold to patrons. As in the past, the restaurant serves breakfast, lunch, and dinner and remains open until 10 or 11 p.m.

In 1972, the City of Okoboji adopted a comprehensive zoning ordinance. The O'Farrell Sisters property was rezoned for commercial use at the time, although much of the property in the area, especially to the south and west of the restaurant, was used for residential housing. In 1978, the area was rezoned into a single-family residential district. This classification limited use of property in the district to single-family homes and duplexes. The O'Farrell Sisters Restaurant continued to operate on the property as a preexisting, nonconforming use.

The rezoning in 1978 was prompted by the death of Edna Mae O'Farrell, the last of the three sisters involved in the operation of the restaurant. The city was concerned at the time that the restaurant would be sold and converted into a bar. It changed the zoning classification to preserve the integrity of the area and to reflect its predominant use.

In 1994, the restaurant operators allowed the liquor license for the restaurant to expire. Alcoholic beverages have not been sold and served on the premises since that time.

In 2004, Leo Parks purchased the restaurant. Parks owns and operates a corporation called Okoboji Barz, Inc. He continued to operate the restaurant in the same manner as in the past, but promptly applied to the city for a class "C" liquor license. Parks wanted to resume the sale and service of alcoholic beverages to patrons, but claimed he had no intention of transforming the restaurant into a bar or tavern. The city denied the application. It determined the sale and service of alcoholic beverages at the restaurant would violate the zoning ordinance. Parks appealed the ruling to the Iowa Department of Commerce, Alcoholic Beverages Division.

At the same time, the city feared Parks would ultimately transform the restaurant into a bar or tavern if he was successful in his appeal. Consequently, it filed a petition in district court for a temporary and permanent injunction to prohibit Parks from "operating a bar or tavern" on the premises. The city and Parks later additionally sought declaratory relief. The city asked the district court to declare Parks could not operate a bar on the restaurant premises. Parks asked the district court to declare that the sale and service of alcoholic beverages at the restaurant under a class "C" liquor license would not violate the city ordinance. The administrative law judge who heard the appeal from the city's decision to deny the liquor license determined Parks would be entitled to a liquor license if he succeeded in his declaratory relief action in district court.

At the hearing before the district court, Parks introduced evidence that other restaurants in the area that serve dinner commonly serve alcoholic beverages pursuant to a license. The city did not contest this evidence and did not introduce evidence that the sale and service of alcoholic beverages by the restaurant would adversely impact the surrounding neighborhood. Instead, the city claimed the sale of alcoholic beverages was not permitted as a matter of law under the ordinance.

The district court denied the injunction. It found Parks had no intent to sell alcoholic beverages without a class "C" liquor license. Consequently, the district court determined no irreparable harm would result if the injunction was not issued. However, the district court declared Parks was "no longer authorized to operate a bar selling alcoholic beverages to the public" on the premises because the sale of alcoholic beverages would constitute a separate and distinct nonconforming use and an expansion of an existing nonconforming use.

The district court also rejected the claim by Parks that the zoning ordinance constituted impermissible spot zoning.

Parks appeals and raises three claims. First, he claims the district court erred by concluding the sale of alcoholic beverages pursuant to a class "C" permit would constitute a distinct nonconforming use of the property. Second, Parks claims the trial court erred in concluding the sale and service of alcoholic beverages would be an unlawful expansion of a nonconforming use. Finally, Parks claims the trial court erred in concluding the 1978 rezoning scheme did not constitute impermissible spot zoning.

We transferred the case to the court of appeals. It remanded the case to the district court to enter an order for the city to issue a liquor license for the restaurant. It held the sale of alcoholic beverages at the restaurant would not constitute a nonconforming use or an expansion of the existing nonconforming use. The city sought, and we granted, further review.

**II. Standard of Review.**

This case was tried in equity. As such, our review is de novo. *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006); Iowa R. App. P. 6.4 (2003). "Under this review, we give weight to the fact findings of the district court, especially as to the credibility of witnesses, but we are not bound by them." *City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310, 313 (Iowa 2006).

**III. Issues Presented.**

The district court declared Parks was not "authorized to operate a bar selling alcoholic beverages to the public" on the premises. In doing so, the district court denied Parks' request for a declaration that the issuance of a liquor license for the restaurant was not prohibited under

the zoning ordinance. On appeal, Parks challenges the prohibition against the issuance of a liquor license. Parks acknowledges he does not desire to change the restaurant into a tavern or nightclub, but only wants to sell and serve alcoholic beverages to the restaurant patrons. Thus, the fundamental issue we face is whether this restaurant will retain its status as a legal, nonconforming use if alcoholic beverages are sold and served to patrons.[1]

### IV. Nonconforming Use.

A nonconforming use of property is one that lawfully existed prior to the time a zoning ordinance was enacted or changed, and continues after the enactment of the ordinance even though the use fails to comply with the restrictions of the ordinance. *Perkins v. Madison County*, 613 N.W.2d 264, 270 (Iowa 2000). The prior use of the property essentially establishes a vested right to continue the use after the ordinance takes effect. *See Quality Refrigeration Servs. v. City of Spencer*, 586 N.W.2d 202, 206 (Iowa 1998). The nonconforming use is permitted to continue until legally abandoned. *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 430 (Iowa 1996). However, the nonconforming use cannot be enlarged or extended. *Stan Moore Motors, Inc. v. Polk County Bd. of Adjustments*, 209 N.W.2d 50, 52 (Iowa 1973). This limiting principle is carved into the city ordinance at issue in this case. The ordinance expresses an intent "to permit . . . nonconformities to continue until they

---

[1]The parties correctly agree the restaurant is a legal nonconforming use. The city's zoning ordinance explicitly provides: "The lawful use of a building existing at the time of the enactment of this Ordinance may be continued even though such use may not conform with the regulations of this Ordinance for the district in which it is located." Okoboji Zoning Ordinance art. IV, § 2. The ordinance defines nonconformities as "lots, structures, buildings and uses which were lawful before this ordinance was effective or amended, but which would be prohibited, regulated or restricted under the provisions of this Ordinance or future amendment," and allows "nonconformities to continue until they are removed." Okoboji Zoning Ordinance art. IV, § 3.

are removed, but not to encourage their survival," and provides "that nonconformities shall not be enlarged upon, expanded or extended, nor be used as grounds for adding other structures or uses prohibited elsewhere in the same district." Okoboji Zoning Ordinance art. IV, § 3. Nevertheless, the body of law governing nonconforming uses of property recognizes "[l]andowners are given some latitude . . . and may change the original nonconforming use 'if the changes are not substantial and do not impact adversely on the neighborhood.' " *Perkins*, 613 N.W.2d at 270 (citing *City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 186 (Iowa 1986)).

In this case, the city does not rely on any particular facts and circumstances associated with the sale and service of alcoholic beverages by the restaurant to support its claim that Parks would substantially expand the nonconforming use of his property as a restaurant by serving alcoholic beverages to patrons. Instead, it asserts the underlying sale of alcoholic beverages, under the ordinance, is a separate and distinct use of the property from the current use of the property as a restaurant. As a result, the city maintains, as the district court found, that expanding the nonconforming use of the property as a restaurant to also include a separate and distinct use not permitted in the zoning district would constitute an illegal expansion or addition of the nonconforming use as a matter of law. Additionally, the city asserts, as the district court found, the prior separate and distinct nonconforming use of the property to sell and consume beer was abandoned in 1994 and cannot, as a matter of law, be resumed under the ordinance.

The nonconforming use of property "must be a continuation of the same use and not some other kind of use." 8A Eugene McQuillin, *The Law of Municipal Corporations* § 25.206, at 138 (3d ed. rev. vol. 2003).

On the other hand, a nonconforming use is a legal use of property, and accessory uses allowed under an ordinance are generally permitted in conjunction with the continued operation of a nonconforming use. *Okoboji Barz, Inc.,* 717 N.W.2d at 315.

The city does not address the sale and service of alcoholic beverages as an accessory use under the ordinance. Instead, the city only maintains the sale and service of alcoholic beverages is a separate and distinct use of property under the ordinance, which was abandoned as a nonconforming use after the ordinance was enacted so that the proposed resumption of the use would constitute a prohibited expansion of the nonconforming use of the property as a restaurant.

We begin our examination of this claim by considering the city's premise that the zoning ordinance treats the sale and service of alcoholic beverages as a separate and distinct use of property. The ordinance contains a comprehensive list of defined terms. *See* Okoboji Zoning Ordinance art. II. Only three defined terms mention the sale and service of alcoholic beverages. *See id.* The ordinance defines a "cocktail lounge, cabaret" as a business where a variety of activities take place, including the sale of alcoholic beverages for consumption. *Id.* The ordinance defines a "nightclub" as an establishment engaged in entertainment and other activities, including the service for on-premises consumption of alcoholic beverages. *Id.* Lastly, the ordinance defines a "tavern" as an establishment primarily engaged in serving alcoholic beverages for on-premises consumption, with the option of serving food. *Id.* On the other hand, the ordinance defines a restaurant as a place "where meals . . . are prepared," without any reference to the sale and service of alcoholic beverages. *Id.* The city asserts this approach of limiting the sale and service of alcoholic beverages to only three specific uses of property,

while excluding the sale and service of alcoholic beverages from the definition of a restaurant, expresses a clear intent for the sale and service of alcoholic beverages to be a separate and distinct use of property from the use of property as a restaurant.

We agree with the city that the sale and service of alcoholic beverages is a specific permitted activity in the operation of three types of businesses. We also agree with the city that the sale and service of alcoholic beverages is not a specific permitted activity in the use of property as a restaurant. Yet, the interpretation by the city essentially ignores the doctrine of accessory uses of property.

Accessory-use provisions are a common component to municipal ordinance schemes because it is next to impossible for a zoning ordinance to express " 'every possible lawful use' " of property. *Hannigan v. City of Concord*, 738 A.2d 1262, 1266 (N.H. 1999) (quoting *Town of Salem v. Durrett*, 480 A.2d 9, 10 (1984)). Thus, the doctrine of accessory uses contemplates property may be used in ways not expressly permitted under the ordinance. *Id.*

The City of Okoboji ordinance specifically recognizes accessory uses of property and buildings and defines an accessory use as

> a use or structure subordinate to the principal use of a building on the lot and serving a purpose customarily incidental to the use of the principal building or an accessory lakeshore storage building.

Okoboji Zoning Ordinance art. II. If an accessory use under the ordinance is limited to uses not specifically included in the definition of other uses, then the general definition of "accessory use" would largely be rendered superfluous. *Hannigan*, 738 A.2d at 1266–67. In interpreting ordinances, we are obligated to consider the ordinance as a whole and give all parts of it meaning. *Kordick Plumbing & Heating Co. v.*

*Sarcone*, 190 N.W.2d 115, 117 (Iowa 1971). Moreover, such an interpretation conflicts with the purpose and policy of accessory uses built into the ordinance.

Accordingly, we reject the conclusion of the district court that the sale and service of alcoholic beverages in conjunction with the operation of a nonconforming use of property as a restaurant constitutes an expansion of the nonconforming use as a matter of law. Likewise, we reject the conclusion of the district court that the sale and service of alcoholic beverages was a nonconforming use of the property that was abandoned after the enactment of the ordinance. The principal and primary use of this property since 1958 has been as a restaurant, and the restaurant is a nonconforming use that is permitted to continue today. Thus, the fighting question is whether the sale and service of alcoholic beverages is permissible as an accessory use under the ordinance to the nonconforming use of the property as a restaurant. *See* McQuillin § 125.125, at 421–22 ("The question what constitutes auxiliary and incidental uses has particular significance relevant to authorized primary nonconforming uses, since in an important sense they measure the extent of rights in such uses."). Parks argues that the proposed sale and service of alcoholic beverages is substantially the same use of the property as a restaurant.

Unless an ordinance specifies the types of accessory uses, a particular use will be accessory when it is customary and incidental to the principal use of the property. *Simmons v. Zoning Bd. of Appeals*, 798 N.E.2d 1025, 1028 (Mass. App. Ct. 2003). The ordinance in this case reflects this standard. A use is customary so as to qualify as an accessory use when it is often found in conjunction with the principal use. *Stochel v. Planning Bd.*, 792 A.2d 572, 578 (N.J. Super. Ct. Law Div.

2000); *see also City of Emmetsburg v. Mullen*, 129 N.W.2d 677, 678 (Iowa 1964) (noting proof of the manner in which other buildings in the district are utilized is useful in "determining just what construction or interpretation the city officials, and in fact city residents, place upon the provisions of the ordinance relative to accessory uses"). In other words, the question is whether the accessory use is so common that the ordinance could not have intended to prevent its use. *Whaley v. Dorchester County Zoning Bd. of Appeals*, 524 S.E.2d 404, 410 (S.C. 1999).

Parks produced ample evidence in this case that restaurants in the great lakes region customarily serve alcoholic beverages to dining patrons. The city did not dispute this evidence. Based on the undisputed evidence, we conclude the City of Okoboji ordinance does not preclude the sale and service of alcoholic beverages as an accessory use to the principal use of property as a restaurant. Thus, the only remaining question is whether the sale and service of alcoholic beverages would nevertheless constitute an expansion of a nonconforming use.

This legal issue has been addressed by a number of other jurisdictions. Indeed, a number of courts have held the addition of the sale of alcohol is an unlawful extension of a nonconforming restaurant as a matter of law. *See Fulford v. Bd. of Zoning & Adjustment*, 54 So. 2d 580, 582 (Ala. 1951) (holding "the sale of beer in connection with the operation of a restaurant on said premises was and is an unlawful and unauthorized extension of the non-conforming restaurant business" under the city's zoning ordinance); *Town Council v. State Bd. of Equalization*, 296 P.2d 909, 912 (Cal. Dist. Ct. App. 1956) (declaring addition of liquor sales to nonconforming restaurant already selling beer " 'would be an extension and enlargement of their existing

nonconforming use of the property and would create a use of the property prohibited by the zoning ordinance'" (quoting *Salerni v. Scheuy*, 102 A.2d 528, 531 (Conn. 1954))); *Hooper v. Del. Alcoholic Beverage Control Comm'n*, 409 A.2d 1046, 1050 (Del. 1979) ("Introducing the sale of alcoholic beverages into [a residential] district would, in our judgment, be an unlawful extension of a nonconforming restaurant business."). Those courts rely on the idea that the sale of alcoholic beverages changes the nature and character of a restaurant as a matter of law.

On the other hand, a number of courts have allowed nonconforming restaurants or hotels to add the sale of alcoholic beverages. *See Redfern v. Creppel*, 455 So. 2d 1356, 1361 (La. 1984) (allowing nonconforming restaurant to sell alcoholic beverages); *Gauthier v. Village of Larchmont*, 291 N.Y.S.2d 584, 587 (N.Y. App. Div. 1968) (allowing nonconforming hotel to sell alcoholic beverages); *Appeal of Sawdey*, 85 A.2d 28, 31 (Pa. 1951) (same). These cases hold the sale of alcoholic beverages to be an accessory use. *See Redfern*, 455 So. 2d at 1361 ("[T]he sale of alcoholic beverages is properly an accessory use to the restaurant operation"); *Gauthier*, 291 N.Y.S.2d at 587 ("Clearly, the service of liquor refreshment is inseparable from a modern hotel and as a matter of law a bar therein is an accessory use."); *Sawdey*, 85 A.2d at 31 ("[T]he accommodation of the service of liquor refreshment is usually regarded to be largely inseparable from a modern hotel.").

These cases largely reflect that the different outcomes are driven by the particular facts and circumstances. Under some circumstances, the sale of alcoholic beverages by a restaurant can create different conditions, and the restaurant can take on different characteristics. Yet, under other circumstances, the sale of alcoholic beverages incidental to

the service of meals may not alter the existing operation of the restaurant or characteristic of the area.

While the evidence in this case shows area restaurants customarily service alcoholic beverages with meals, this evidence only helps establish that the sale of alcoholic beverages can be an accessory use. Yet, we are not required in this case to decide if the particular manner that Parks ultimately operates his restaurant if issued a liquor license will constitute an expansion of the restaurant. We only declare that the city ordinance does not prohibit a restaurant from serving alcoholic beverages as an accessory use, and the sale and service of alcoholic beverages does not, by itself, constitute an unlawful expansion of this nonconforming restaurant.

We conclude the district court erred in granting the requested declaratory relief. The district court also erred in failing to grant Parks' request for a declaration that the city ordinance does not prohibit the issuance of a license to sell and serve alcoholic beverages at O'Farrell Sisters in conjunction with the operation of the restaurant. However, we only hold that the sale and service of alcoholic beverages to restaurant patrons is not prohibited under the ordinance as a matter of law and that it does not constitute an expansion of a nonconforming use of the property as a restaurant as a matter of law. Thus, the declaration sought by Parks is limited to this specific holding. We express no opinion whether Parks is automatically entitled to a liquor license or whether the manner he may ultimately operate the restaurant upon issuance of any liquor license would not violate the ordinance as an expansion of a nonconforming use.

**V. Conclusion.**

We reverse the judgment of the district court and remand the case for entry of a declaratory judgment in accordance with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; AND CASE REMANDED.**