In re MARRIAGE OF Marie DAVIS
and Richard Davis.

Upon the Petition of Marie
Davis, Appellant,

And Concerning Richard
Davis, Appellee.

No. 98–1294.

Supreme Court of Iowa.

March 22, 2000.

Rehearing Denied April 10, 2000.

Jill Southworth Rolek of Rolek Law Office, West Des Moines, for appellant.

Charles S. Crook III, Des Moines, for appellee.

LAVORATO, Justice.

This appeal and cross-appeal grow out of a remand mandate from the court of appeals in a dissolution proceeding. The remand directed the district court to enter a Qualified Domestic Relations Order (QDRO) granting Marie Davis one-half of Richard Davis' police retirement plan. Marie appeals the district court remand ruling that granted her one-half of the surviving-spouse benefits under the plan. She contends the court should have granted her the entirety of such benefits. She also challenges the district court's ruling changing the monthly payment date of income benefits under the plan. In addition, she requests appellate attorney fees.

In his cross-appeal, Richard contends the district court erred in awarding Marie any surviving-spouse benefits and in ordering him to pay Marie interest on an additional property award ordered by the court of appeals. He also asks for appellate attorney fees.

We conclude the district court lacked authority on remand to (1) award any surviving-spouse benefits to Marie and (2) order Richard to pay Marie interest. We

further conclude the district court ruling on the monthly payment date was correct. We deny Marie appellate attorney fees. We lack jurisdiction to consider Richard's request for attorney fees because his cross-appeal was untimely. We therefore vacate in part, affirm in part, and remand with directions.

## I. Background Facts and Proceedings.

Marie and Richard were married in April 1962. Marie brought three children into the marriage, and Richard and Marie had two daughters of their own.

Throughout the marriage, Richard was an employee of the Des Moines Police Department and was a participant in the Municipal Fire and Police Retirement System (MFPRS).

Marie filed a petition for dissolution of marriage on December 14, 1995. Before this, Richard had filed a service retirement application with the MFPRS on October 30, 1995, and chose the basic benefit option among several benefit options that were available. The basic benefit option provides for a retirement allowance based upon years of service, with the spouse of the member receiving for his or her lifetime fifty percent of the member's current retirement allowance upon the member's death. *See* Iowa Code § 411.6 (1995). Richard named Marie as beneficiary, and Marie signed a consent to this designation of her as beneficiary.

Following a trial, the district court entered its ruling and dissolution decree on October 7, 1996. In dividing the marital property, the district court awarded the homestead to Marie and granted Richard a $15,000 judgment against Marie as his share of the equity in the homestead. As to Richard's pension, the court ruled: "Richard is awarded his police retirement monthly benefit and shall pay Marie one-half of the monthly benefit. The first payment is due March 1, 1997."

Marie appealed, and we transferred the case to the court of appeals. Relative to Richard's pension, the court of appeals stated:

> Both parties indicated they are amenable to subjecting Richard's police retirement to a Qualified Domestic Relations Order (QDRO). We therefore remand to the trial court to enter a QDRO granting Marie one-half of Richard's police retirement plan.

Among other things, the court of appeals found that Marie was entitled to an additional $20,000 in property. To accomplish this, the court eliminated the $15,000 judgment that the district court had awarded Richard against Marie and ordered Richard to pay Marie $5000 ninety days from procedendo issuing. Apparently, the court of appeals was unaware that Marie had paid Richard the $15,000 judgment long before the court of appeals filed its opinion.

On remand, the district court received evidence on three issues: (1) whether Marie was entitled to surviving spouse benefits under Richard's retirement plan, (2) whether Richard owed interest to Marie because of the court of appeals additional award of $20,000 to Marie, and (3) whether Richard had to pay one-half of his retirement benefit on the first day of every month or sometime during the month in which he received it.

The district court interpreted the court of appeals decision as granting Marie not only one-half of the monthly benefit but also one-half of the surviving-spouse benefits. The district court therefore ruled that the Marital Property Order (the equivalent of a QDRO under the MFPRS rules) should reflect that, in the event Richard predeceases Marie, one-half of the surviving-spouse benefits should go to her. For the remainder of the surviving-spouse benefits, the district court ruled that Richard retained the right to designate a new beneficiary once a new "surviving spouse" exists under Iowa Code section 411.1(19).

The district court further concluded that Richard was not required to pay Marie her share of the monthly retirement income benefits on the first day of each month. The court ruled this way because Richard's right to receive the benefits was contingent upon his living through the month. The district court noted that the Marital Property Order would control when Marie and Richard would receive their share of the monthly benefits.

Finally, the district court concluded that Marie was entitled to interest on $15,000 of the $20,000 additional property awarded her by the court of appeals. The district court ordered Richard to pay Marie interest at the rate of $4.11 per day from January 28, 1998 (the date of the court of appeals decision) to May 1, 1998 (the day Richard paid the outstanding $5000).

We set out additional facts as they relate to the issues we discuss.

## II.  Authority on Remand.

■ When, as here, an appellate court remands for a special purpose, the district court upon such remand is limited to do the special thing authorized by the appellate court in its opinion and nothing else. *Kuhlmann v. Persinger*, 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967). The district court has no authority to do anything except to proceed in accordance with the mandate. *Id.* If the district court proceeds contrary to the mandate, its decision must be treated as null and void. *Id.* Therefore, when the "remand limits the issues for determination, the court on remand is precluded from considering other issues, or new matters." 5 Am.Jur.2d *Appellate Review* § 787, at 455 (1995).

■ The court on remand should interpret the mandate in "accordance with the context of the proceedings" and should "tak[e] into account the appellate court's opinion and the circumstances it embraces." *Id.* § 782, at 451–52.

Additionally,

[t]he mandate serves the purpose of communicating the judgment of the appellate court to the lower court [on remand], and the opinion, which is part of the mandate, serves an interpretative function. Thus, [a court on remand] need not read the mandate in a vacuum, but rather has the opinion of the appellate court to aid it in interpreting the mandate. In this way, the court may examine the rationale of the appellate opinion in order to discern the meaning of language in the court's mandate.

*Id.* at 452.

■ Finally, "[w]hat is contemplated in the appellate opinion by necessary implication may be considered equivalent to that clearly and expressly stated in the appellate opinion." *Id.*

## III.  The Appeal.

Marie contends on appeal that the district court erred on remand in dividing the surviving-spouse benefits. She claims she is entitled to all of the surviving-spouse benefits because (1) the retirement plan designated her as the surviving spouse, and this was not altered by the original dissolution decree or the court of appeals ruling; (2) Iowa Code chapter 411 requires her alone to be awarded surviving-spouse benefits; and (3) contract law requires she should receive the entirety of the surviving-spouse benefits. She also insists that she should receive retirement benefits on the first day of each month as the district court ruled in the dissolution decree. Finally, she claims she is entitled to appellate attorney fees.

Richard argues that Marie should have no right to surviving-spouse benefits or, in the alternative, that she should only receive one-half of such benefits. He further argues that payment of the monthly benefits need only be made at some point during the month and not on the first day of the month.

**A.  The surviving spouse benefits.** Iowa Code chapter 411 governs retirement

plans for police officers and fire fighters. Chapter 411 therefore controls on the question of whether a spouse who has been designated as a surviving spouse under the plan here can continue to be a surviving spouse following a dissolution of marriage decree.

Iowa Code section 411.1(19) defines a surviving spouse:

"*Surviving spouse*" shall mean the surviving spouse of a marriage solemnized prior to retirement of a deceased member from active service. *Surviving spouse shall include a former spouse only if the division of assets in the dissolution of marriage decree pursuant to section 598.17 grants the former spouse rights of a spouse under this chapter* . . . .

(Emphasis added.)

Under the second sentence of section 411.1(19), a person who is a former spouse of the retiree at the time the retiree dies is a surviving spouse entitled to the surviving-spouse benefits *only if* the dissolution decree granted the former spouse such benefits.

■ That brings us to the following question: What did the court of appeals mean by its mandate to the district court on remand? Again, that mandate stated:

Both parties indicated they are amenable to subjecting Richard's police retirement to a Qualified Domestic Relations Order (QDRO). We therefore remand to the trial court to enter a QDRO granting Marie one-half of Richard's police retirement plan.

We cannot answer the question we pose in a vacuum. Rather, we must look at what happened in the district court prior to the court of appeals decision to determine just what the parties had agreed to. In short, we must consider the context of the proceedings and the circumstances the mandate language embraces.

**1. Proceedings in the district court prior to the court of appeals decision.** In the dissolution hearing, the only refer-

ence to what Marie desired from Richard's retirement benefits is this exchange between Marie and her attorney.

Q. Are you asking the Court to give—award you one-half of whatever the accrued benefits are under this retirement program? A. Yes.

Q. Would that be essentially the sole source of your income at this time? A. Yes.

The court sustained an objection to the last question and answer because the record was that Marie had other sources of income. The point, however, is that there was no mention of Marie's desire to be awarded surviving-spouse benefits under Richard's retirement plan.

Richard's testimony on the same subject came in response to his attorney's questions:

Q. And as far as the support or division of the retirement each month, what is your desire to have the Court do on that? A. I told her I would give her half of it—

Again, there was no mention regarding surviving-spouse benefits.

The district court in its dissolution decree clearly did not award Marie surviving-spouse benefits. Rather, the decree provided that "Richard is awarded his police retirement monthly benefit and shall pay Marie one-half of the monthly benefit," with no mention of surviving-spouse benefits. The court ruled this way despite the position Marie took in her posttrial brief that (1) the court should by means of a QDRO divide the gross monthly benefits equally between the parties, and (2) each party should name the other as beneficiary for survivorship purposes.

Additionally, after the court filed its dissolution decree, Marie filed a motion pursuant to Iowa Rule of Civil Procedure 179(b) in which she asked the court to amend and enlarge its findings. Specifically, Marie challenged the court's implied finding that the division of accrued retire-

ment benefits under Richard's retirement fund should be treated as "alimony," whereas the court treated her own retirement plans as property. Alternatively, Marie asked the court to amend and enlarge its findings and order to find as follows:

1. That both parties testified and agreed that income from the Des Moines Police Department post-retirement should be divided equally between the parties as property. Such division should be accomplished by reason of a QDRO order effective as of the date of entry of the decree.

Marie made no mention of surviving-spouse benefits in this motion.

As the testimony of both parties shows, they did agree that the monthly income benefit be divided evenly. However, neither party mentioned a QDRO or whether surviving-spouse benefits should be included in the division.

The district court filed a ruling summarily denying Marie's rule 179(b) motion. She appealed on November 22, 1996.

Eight months later, while the appeal was pending, the parties and their attorneys appeared before another district judge with what appeared to be a stipulation. Marie's attorney dictated the following stipulation into the record:

The stipulation that the parties have agreed to is that a qualified domestic relations order will be entered equally dividing the gross benefits payable to Richard Davis, respondent, under the terms of the Municipal Retirement and Fire System of Iowa.

[Richard's attorney] will prepare an order, signature by [Marie's attorney], approval by the trustee, that shall divide the gross monthly benefits payable to Richard between the two parties, and shall be effective as soon as entered.

In acknowledging the stipulation, Richard's attorney stated: "When I draw up the qualified order, I would like to refer to the fact that either party will accept what-

ever tax liability [there is] on their share." Marie's attorney agreed to this last part of the stipulation.

Again, there was no mention made of surviving-spouse benefits. Pursuant to the stipulation, Richard's attorney drew up a QDRO. When Marie's attorney received the QDRO, she changed it to include a provision requiring all of the surviving-spouse benefits to go to Marie. Richard objected to approving the QDRO because of the surviving-spouse-benefits provision in Marie's favor. From this point on, the parties were at an impasse, and there never was an order approving the stipulation.

**2. Proceedings in the court of appeals.** We have reviewed the briefs the parties filed in the dissolution appeal before the court of appeals. As to Richard's retirement plan, Marie raised the following issue: "The trial court erred in not specifying Richard's pension as property, then dividing the retirement benefits into two equal accounts by means of a Qualified Domestic Relations Order; the trial court erred by characterizing payment to Marie as spousal support, not specifying the amount to be paid, the frequency of payment, the duration of payment ...." In the body of her brief, Marie argued "that the district court erred by not specifically stating that Richard's pension is 'property' which should be divided, *in accordance with the parties' testimony*, into two equal portions by means of a Qualified Domestic Relations Order *with survivors rights to her* ...." (Emphasis added.) As mentioned, neither party testified that the surviving-spouse benefit should go to Marie.

In response, Richard argued that the district court in the dissolution decree correctly divided Richard's retirement account. Additionally, Richard argued that

[s]ince [the district court] required Richard to pay half of his monthly benefit, it little matters whether a Qualified Domestic Relations Order is entered or not. It is clear from the [district court] ruling that he has to pay one-half of the

monthly payment and the date of the commencement of the payment .... *Respondent does not object to the entry of a Qualified Domestic Relations Order to commence on the 1st of March 1997 with respect to his police retirement monthly benefit.*

(Emphasis added.)

Given this history, it is obvious that, when the court of appeals in its remand mandate stated that "Both parties indicated they are amenable to a Qualified Domestic Relations Order," it was referring to the only matter the parties had agreed upon: equal division of the gross monthly benefit. The court of appeals was not referring to surviving-spouse benefits because the parties obviously had not agreed upon that issue. Therefore, when the court of appeals remanded for a QDRO granting Marie one-half of Richard's police retirement plan, it did so only with respect to the monthly income benefit.

By granting Marie one-half of the retirement plan, the court of appeals accepted Marie's argument that the award constituted a property division rather than spousal support. The court of appeals was therefore treating awards of all retirement plans of the parties similarly. For example, the district court's decree had awarded Richard one-half of Marie's 401K plan and one-half of her IPERS plan, an award the court of appeals affirmed. Interestingly, Marie removed Richard as beneficiary from her plans.

We find support for our interpretation of the remand mandate in the court of appeals ruling on Marie's "motion for clarification and amendment and enlargement of ruling." In that motion, Marie asked the court of appeals to amend and enlarge its ruling on the retirement plan to state that Marie "shall also receive survivor benefits of Richard's portion of the retirement plan."

The court of appeals treated the motion as a petition for rehearing pursuant to Iowa Rule of Appellate Procedure 27(a) and denied it. Such a denial in our opinion meant the court of appeals did not intend the QDRO to include surviving-spouse benefits.

On remand, Marie was therefore left with a decree without a provision granting her surviving-spouse benefits. Without such a provision, she simply is not entitled to surviving-spouse benefits according to Iowa Code section 411.1(19), no matter what Marie thinks the equities are and no matter what contractual rights Marie thought she had.

The district court was therefore without authority to enter a Marital Property Order that would have a provision providing surviving-spouse benefits to Marie. Accordingly, we must vacate that part of the district court ruling.

■ **B. Payment date.** The dissolution decree provided that Richard's first payment of the monthly benefit was due March 1, 1997. On remand, the evidence showed that Richard's right to receive the monthly benefit was contingent upon his living through the month. Consequently, he was not entitled to the March 1997 benefit until the end of March. Notwithstanding this circumstance, Marie insists March 1, 1997, was the starting date, and because she did not receive her share of the monthly benefit until approximately the end of the month, she is entitled to one month's payment with interest.

The district court on remand noted that the entry of the Marital Property Order would resolve the issue because Marie will receive her payment directly from the retirement fund, and Richard will have no ability to speed or delay any payment. The court ruled that there would be no arrearages as long as Marie receives her share of the monthly benefit in the month that Richard receives his share. In so deciding, the court noted that Marie was awarded one-half of Richard's police retirement fund so her rights can be no better than Richard's. Marie thinks the

district court was without authority to make such a ruling.

We disagree. We think what the district court did was implicit in the remand mandate. As the district court noted, Marie and Richard will receive monthly payments directly from the retirement fund. The administrators of the MFPRS would necessarily dictate when the monthly payments are made, and Richard would have no control over the decision. The court of appeals in mandating the entry of a QDRO certainly must have realized this practicality and intended the payment date to be that dictated by the administrators. The district court correctly left the timing of the monthly payments to those responsible for the payments. The court also correctly determined there should be no arrearages as long as Marie receives her share of the monthly benefit in the same month that Richard receives his.

■■■■ **C. Appellate attorney fees.** Marie asks for an award of appellate attorney fees. An award of appellate attorney fees in a dissolution proceeding is discretionary. *In re Marriage of Ask,* 551 N.W.2d 643, 646 (Iowa 1996). In determining this question, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* After considering these factors in light of the record, we conclude Marie should be responsible for her own appellate attorney fees.

**IV. The Cross–Appeal.**

■■■ In his cross-appeal, Richard challenges the district court's determination that he should pay interest on $15,000 of the $20,000 additional property award to Marie. Richard also asks for appellate attorney fees.

The district court entered its remand ruling on June 17, 1998. Marie appealed on July 16, 1998. Richard cross-appealed on July 24, 1998. The cross-appeal was taken more than thirty days after the district court ruling and more than five days after Marie's appeal. Therefore, the cross-appeal was untimely. *See* Iowa R.App. P. 5(a) (providing that cross-appeal must be taken within the thirty days for taking an appeal or in any event within five days after the appeal is taken). Accordingly, we dismiss the cross-appeal for lack of jurisdiction. *See State ex rel. Miller v. Santa Rosa Sales & Mktg., Inc.,* 475 N.W.2d 210, 214 (Iowa 1991) (holding that untimely notice of cross-appeal deprives the appellate court of jurisdiction, and the appropriate remedy is dismissal).

■■■ The dismissal deprives us of jurisdiction to consider Richard's request for appellate attorney fees. The dismissal, however, does not deprive us of jurisdiction to consider the interest award if the award was not a proper matter for the district court to consider on remand. If the award was not a proper matter for the district court to consider on remand, we must on our own motion treat the award as null and void.

In its decision, the court of appeals awarded Marie no interest on the additional $20,000 award. Additionally, in its remand mandate, the court of appeals made no mention of this award. The district court therefore went beyond the remand mandate when it ordered Richard to pay interest on the $15,000 portion of this $20,000 award. The district court had no authority to enter such an order, and for that reason we must vacate the order.

**V. Disposition.**

In summary, we conclude the district court remand ruling ordering that the surviving-spouse benefits be divided between Marie and whomever Richard would designate went beyond the remand mandate from the court of appeals. We therefore vacate that portion of the district court remand ruling.

The district court remand ruling on the payment date did not go beyond the re-

mand mandate but indeed was implicit in the mandate. We therefore affirm that portion of the district court remand ruling.

That portion of the district court remand ruling ordering Richard to pay Marie interest also went beyond the remand mandate. We likewise vacate that portion of the district court remand ruling.

We deny Marie's request for attorney fees. We lack jurisdiction to consider Richard's request for appellate attorney fees because his cross-appeal was untimely.

We remand for the district court to enter a Marital Property Order (the equivalent of a QDRO under the MFPRS rules) not inconsistent with this opinion.

**DECISION OF DISTRICT COURT VACATED IN PART; AFFIRMED IN PART; AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except CARTER, J., who takes no part.