# IN THE SUPREME COURT OF IOWA

No. 130/ 06–1483

Filed January 25, 2008

**CITY OF OKOBOJI**,

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR DICKINSON COUNTY**,

Defendant.

Certiorari to the Iowa District Court for Dickinson County, John P. Duffy, Judge.

Plaintiff filed a writ of certiorari from an injunction entered by the district court following remand. **WRIT SUSTAINED.**

Michael J. Chozen of Chozen & Saunders, Spirit Lake, for plaintiff.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, and Phil C. Redenbaugh, Storm Lake, for defendant.

**CADY, Justice**.

In this certiorari action, we conclude the district court acted illegally by entering an injunction following remand that failed to carry out the directives of our opinion in *City of Okoboji v. Okoboji Barz, Inc.*, 717 N.W.2d 310 (Iowa 2006). We sustain the writ of certiorari and remand the case to the district court for the issuance of a permanent injunction, as previously directed.

## I. Background Facts and Proceedings.

John P. Duffy, a district court judge in the Third Judicial District, entered a ruling in 2004 that denied a request by the City of Okoboji for declaratory and injunctive relief against Okoboji Barz, Inc. and Leo Parks, Jr. The City had asked the district court to declare a proposed addition of a bar or tavern to the existing operation of a marina on property owned by Parks and his corporation constituted an unlawful expansion of a nonconforming use and violated a special use permit.

The marina at the heart of the dispute is located on the shores of Smith Bay of West Lake Okoboji, and is situated on two adjacent parcels of lakefront property formerly operated as two separate marinas. Each parcel houses a separate building with easy access between them. One of the buildings was known as "The Cove," and the other building was known as "Okoboji Boats." The businesses began operating as a single marina known as "Okoboji Boats" more than thirty years ago.

The property is presently zoned for residential use, and Parks operates the marina business as a preexisting, nonconforming use. The marina has sold beer and wine for many years to customers for off-premises consumption, as well as snacks and other beverages. The beer and wine was sold to customers pursuant to a license that permits Parks to sell alcoholic beverages for off-premises consumption. The marina has

never been licensed to sell or serve alcoholic beverages for on-premises consumption.

In 2003, Parks proposed to operate a lakefront bar in conjunction with the operation of the marina. He wanted to provide alcoholic beverages for on-premises consumption by patrons and also offer patrons such activities as karaoke, live music, hog roasts, and monthly full-moon parties. The proposed bar would primarily cater to daytime patrons, but would also remain open until 10:30 p.m. or later. Parks claimed the addition of a bar was an essential component of the modern-day operation of a marina.

Parks sought, and was denied, a class C "commercial" liquor license, which would have permitted the on-premises sale and consumption of alcoholic beverages. This action led to the petition by the City for injunctive and declaratory relief. The district court denied the requested relief following a hearing. The evidence presented at the hearing detailed the past and proposed use of the marina. In particular, Parks described the proposed expansion of the marina as a bar.

The City appealed the district court ruling. On appeal, we determined the proposed use of the property by Parks as a bar would change the "nature and character of the nonconforming use" and would constitute "an unlawful expansion of a prior nonconforming use." *Okoboji Barz, Inc.*, 717 N.W.2d at 316. We held "the district court should have granted the city's request for a permanent injunction enjoining Okoboji Barz, Inc., d/b/a/ Okoboji Boats, and Parks from operating the proposed bar on the premises." *Id.* We remanded the case to the district court "to enter a permanent injunction consistent with this opinion." *Id.*

Following remand, the City filed an application with the district court to issue a permanent injunction. It asked the district court to

enjoin Parks and his corporation from using the marina in the manner "determined by the supreme court to 'change the nature and character of a nonconforming use.'" In particular, the City asked that the injunction prohibit both the operation of the bar and the proposed activities of live music, karaoke, hog roasts, and full-moon parties.

In response, Parks claimed the underlying litigation was confined to whether the marina could operate under a class C liquor license and the injunction we directed to be entered on remand should only prohibit the operation of a bar involving the sale of alcoholic beverages with on-premises consumption as permitted by a class C liquor license. Parks claimed the original petition for injunctive relief brought by the City did not specifically request an injunction to prohibit the use of the marina for live music, karaoke, hog roasts, and full-moon parties, and the injunction ultimately issued could not cover these activities.

Judge Duffy issued an injunction. The injunction only enjoined Parks from using the marina to operate a bar "for sale of alcoholic beverages with on-premises consumption." Consequently, the injunction did not prohibit Parks from using his property to provide live music, karaoke, hog roasts, and full-moon parties to patrons as he had proposed. Moreover, the specific language of the injunction only prohibited the sale of alcoholic beverages in the manner permitted by a class C license. As argued by the city, the injunction did not prohibit Parks from operating the marina as a bar by selling packaged beer and wine on one of the two parcels under the existing beer and wine permits and using the other parcel as an area for patrons to gather in a bar-like atmosphere to open and consume the packaged beer and wine. Similarly, the injunction arguably did not prohibit Parks from mooring an excursion pontoon to the dock of the marina and selling alcoholic

beverages from a bar on the pontoon to patrons under a class D liquor license for excursion boats.

The City filed a petition for writ of certiorari with this court. It requested the district court order be annulled and a new procedendo be issued to direct the district court to enter a permanent injunction that prohibited Parks from using his property as a bar for the consumption of alcoholic beverages and from engaging in the activities associated with the proposed bar. We granted the petition and now consider the writ.

## II. Standard of Review.

Our review of an original certiorari action is for correction of errors at law. *State Pub. Defender v. Iowa Dist. Ct.*, 633 N.W.2d 280, 282 (Iowa 2001). We examine the judgment and action of the tribunal below to determine if the tribunal exceeded its jurisdiction or acted illegally. *Id.* Generally, judgment on certiorari is limited to sustaining or annulling the proceedings. *Whitlock v. Iowa Dist. Ct.*, 497 N.W.2d 891, 893 (Iowa 1993).

A mandate to the district court contained in a decision of this court becomes the law of the case on remand, and a district court that misconstrues or acts inconsistently with the mandate acts illegally by failing to apply the correct rule of law or exceeding its jurisdiction. *See Kuhlmann v. Persinger*, 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967). Thus, a writ of certiorari can be used to correct action by a district court on remand that is contrary to a mandate. *See id.* (recognizing other forms of relief when a district court misconstrues a mandate); *see also In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255–56, 16 S. Ct. 291, 293, 40 L. Ed. 414, 416 (1895) (explaining a trial court's failure to implement a mandate can be remedied by a new appeal or writ of mandamus). If the

district court action is annulled, the mandate remains to be carried out and we can remand the case for that purpose.

### III.  Discussion.

It is a fundamental rule of law that a trial court is required to honor and respect the rulings and mandates by appellate courts in a case.  *See Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994). The rule is fundamental to the effective operation of our multitiered judicial system.  *See Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1508 (11th Cir. 1987).  It accounts for our orderly system of justice, which in turn contributes in a substantial way to the overall stability of our society.  Since its earliest days, the United States Supreme Court recognized that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court."  *Briggs v. Pennsylvania R.R.,* 334 U.S. 304, 306, 68 S. Ct. 1039, 1040, 92 L. Ed. 1403, 1405 (1948).  Similarly, we have repeatedly observed that a district court, on remand of a case for some special purpose, "is limited to do the special thing authorized by this court in its opinion, and nothing else."[1] *Kuhlmann,* 261 Iowa at 468, 154 N.W.2d at 864 (citing prior cases and authorities).

Conceptually, the mandate rule is a by-product of the distinct roles between trial and appellate courts.  Generally, the primary role of an appellate court is to correct any error in the judgment of the district court, while the responsibility to award and carry out court judgments is normally reserved for the district court.  Yet, an opinion issued by an

---

[1]Federal courts have recognized three narrow exceptions that would allow a district court to deviate from a mandate.  *See United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002).  These exceptions are:  "(1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice."  *Id.* at 657.

appellate court in the exercise of its jurisdiction often requires further action to be performed to properly execute the judgment and decision. Thus, our judicial system is generally set up so the execution of an action needed to carry out the judgment of the appellate court is left to be done by the court in the best position to do so. *Casey*, 14 F.3d at 857 (reviewing the history of the mandate rule). The appellate court mandate directs a district court in its role to implement the appellate court mandate. *In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000). Consequently, the practice is very circumscribed. On remand, the jurisdiction of the case is returned to the district court for the purpose of doing the act authorized or directed by the appellate court in its opinion "and nothing else." *Id.* If the district court proceeds contrary to the mandate, its decision is viewed as null and void. *Id.* Thus, the district court is only vested with jurisdiction on remand "to the extent conferred by the appellate court's opinion and mandate." 5 Am. Jur. 2d *Appellate Review* § 784 (1995). In this way, the question whether the district court has properly followed the mandate cannot only involve the proper construction of the mandate by the district court, but also the jurisdiction of the district court to act. *Id.* The district court has " 'no power but to obey the judgment of the appellate court.' " *Glenn v. Chambers*, 244 Iowa 750, 754, 56 N.W.2d 892, 895 (1953) (quoting 3 Am. Jur. *Appeal and Error* § 1234 (1936)).

The first task of the district court, when presented with a mandate on remand, is to determine the precise action directed to be done by the appellate court. Often, as in this case, the appellate mandate will simply instruct the district court to proceed consistently with the appellate court decision. In such cases, the district court must not read the mandate in a vacuum, but must consider the full opinion of the appellate court and

the circumstances the opinion embraces. *Davis*, 608 N.W.2d at 769. The rationale of the appellate court opinion must be examined to uncover the intent of the appellate court. The "letter and spirit" of the mandate must be observed and implemented. *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). The critical objective of the district court is to proceed "in accordance with the mandate and the law of the case as established on appeal." *Id.*

In this case, the district court failed to follow the guiding principles of law to discern our intent and follow our mandate. Contrary to these principles, the district court necessarily read the mandate in a vacuum and essentially ignored the holding in the opinion derived from the legal issue we faced on appeal, as well as the rationale we used to reverse the district court decision. Contrary to our law, the district court on remand chose to resurrect the original pleadings in the case and rely on a single factual pleading in the original petition filed by the City to limit its authority to issue the injunction. The authority of the district court to issue the injunction, however, came only from our opinion, and there was no justification to turn back to the pleadings as a source of authority to issue the injunction on remand. Nothing in our opinion suggested the approach taken by the district court or the limitation it imposed on its authority to issue the injunction.

The injunction issued by the district court fell well short of the letter and spirit of our opinion and essentially undermined the legal process relied upon by the City to seek enforcement of its ordinances. In our written opinion, we unmistakably declared that the proposed use of the marina as a bar would constitute an illegal expansion of a nonconforming use. The rationale we used was that the proposed bar would substantially change the use of the marina property. Our decision

was based on the expanded activities associated with the proposed bar, not the particular manner or licensing scheme Parks sought to employ to ultimately convert the marina into a place for people to gather and consume alcoholic beverages in the midst of various leisure and party activities. Our discussion in the opinion concerning Parks' efforts to obtain a license to sell alcoholic beverages for on-premises consumption in conjunction with the operation of the proposed bar was merely part of the historical background of the case. Our opinion contained no language that could reasonably be relied upon to imply the injunction prohibiting the operation of the proposed bar should be tied to the manner in which the alcoholic beverages would be sold and consumed on the premises, or that the bar would not constitute an illegal expansion of the use of the marina if it could be operated without a class C liquor license. Instead, the important circumstances driving the required injunction concerned the activities associated with the operation of the bar. The full opinion and the circumstances it embraced made it abundantly clear that the injunction must prohibit the activity of operating a bar under the circumstances proposed without regard to the manner alcoholic beverages would be sold or consumed.

We conclude the trial court failed to carry out its responsibility to implement the mandate pursuant to the letter and spirit of our opinion. This constituted legal error. Accordingly, we remand the case to the district court with directions to enter a permanent injunction consistent with our prior opinion.

## IV. Conclusion.

We conclude the district court erred in failing to enter a permanent injunction as directed by our prior mandate. We sustain the writ and

remand the case to the district court to enter a permanent injunction consistent with the mandate of our prior opinion without delay.

**WRIT SUSTAINED.**