# IN THE COURT OF APPEALS OF IOWA

No. 3-1013 / 13-0296
Filed March 26, 2014


**HOMEOWNERS ASSOCIATION OF THE
COVES OF SUNDOWN LAKE,**
    Plaintiff-Appellee,

**vs.**

**APPANOOSE COUNTY BOARD OF
SUPERVISORS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Appanoose County, Lucy J. Gamon, Judge.


The Appanoose County Board of Supervisors appeals the district court ruling granting the Homeowners Association of the Coves of Sundown Lake's writ of certiorari. **AFFIRMED.**


George W. Appleby, Des Moines, for appellant.

Randall B. Caldwell, and Dennis F. Chalupa until deceased, of Caldwell, Brierly, Chalupa & Nuzum, P.L.L.C., Newton, for appellee.


Heard by Doyle, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

The Appanoose County Board of Supervisors (Board) appeals the district court order granting the Homeowners Association of the Coves of Sundown Lake's (Association) writ of certiorari. The Board claims the district court erred in finding the Association had standing to request the writ. The Board also contends the district court erred in finding: (1) the Board acted illegally in denying the Association's petition to establish a rural improvement zone on procedural grounds after setting the petition for a public hearing; and (2) the Board acted illegally in denying the petition on the merits. We find the Association has standing to request the writ, the Board acted improperly in finding the Association had failed to meet the filing requirements after granting a public hearing, and the Board acted improperly in considering irrelevant matters in denying the Association's request for a rural improvement zone. We affirm.

## I. Background Facts and Proceedings

The Association is comprised of several owners of land surrounding Sundown Lake in Appanoose County. The Association filed a petition for writ of certiorari after the Board refused a request to establish a rural improvement zone (zone) surrounding the lake.

The landowners requested the establishment of a zone for the purpose of diverting future property tax revenue growth towards making improvements in the Sundown Lake area. The petition to establish the zone was filed with the Board by 172 signatories, claiming they comprised at least twenty-five percent of the residents of the proposed zone as well as twenty-five percent of the total

assessed value of the proposed zone. *See* Iowa Code § 357H.2 (2011). The Association requested a public hearing before the Board to establish the zone. The Board held a public hearing on November 2, 2012. During the hearing, information on the need for improvements to the lake—most notably to alleviate the effects of silting—was presented. The Board also discussed the requirements for establishment of a zone and the loss of revenue to the county if a zone was created. The statutory requirements necessitating that the Board hold a hearing were not discussed.

The Board issued its decision on November 13, 2012, finding the petitioners had failed to meet the threshold requirements for Board consideration and further denying the petition because of the loss of tax revenue to the county as a whole.

The Association, acting on behalf of the individual residents who signed the petition, filed a petition for writ of certiorari on December 6, 2012. After a hearing, the district court determined the Association had standing to pursue the writ. The district court also found the Board was precluded from examining whether the petition had satisfied the statutory requirements for holding a hearing because the Board had set and held the hearing. The district court also ruled the Board acted illegally by concluding the zone was not in need of improvements based upon considerations outside the scope of the statute, specifically, the impact on county tax receipts. The writ was granted, and the court ordered the Board to reconsider the petition.

## II.  Standard of Review

"Certiorari is a procedure to test whether a lower board, tribunal, or court exceeded its proper jurisdiction or otherwise acted illegally."  *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009).  We review for correction of errors at law.  *City of Okoboji v. Iowa Dist. Ct.*, 744 N.W.2d 327, 330 (Iowa 2008).  "Relief through certiorari is strictly limited to questions of jurisdiction or illegality of the challenged acts."  *Barnhill*, 765 N.W.2d at 272.

## III.  Discussion

### A.  Standing

The Board claims the Association lacks standing to request the writ of certiorari because the Association was not a party to the original petition.

Certiorari is an extraordinary remedy aimed at correcting the illegal act of an inferior court.  *State v. West*, 320 N.W.2d 570, 573 (Iowa 1982).  It is the general rule that only a party to the action before the inferior court may obtain the writ.  *Id.*  It is understood an association may, in certain circumstances, assert the rights of its members.  *Citizens for Washington Square v. City of Davenport*, 277 N.W.2d 882, 886 (Iowa 1979).  To do so, an association must show that any of its members are suffering an immediate or threatened injury that would have been a justiciable case had one of the individual members brought it in their own capacity.  *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977).  An association must also show the individual participation of each injured party is unnecessary.  *Id.*  Finally, the interests an association seeks to protect must be germane to the organization's purpose.  *Id.* at 343.

Here, the Association is a collection of the homeowners within the proposed zone.  Although the Association was not a party to the original petition, it does include the persons who were signatories to the petition as its members.  The signatory-members chose to pursue the writ collectively through the Association rather than on an individual basis.  Assuming the petition was proper and required the Board to establish the proposed zone, as the Association asserts, the individual members have and will continue to suffer harm because of the Board's action.  Although each of the members of the Association has been harmed, none have been harmed in any individual way that would require individual participation.  It is the collective interest of the group, as homeowners within the proposed zone, which is the object of these proceedings.  As a collection of homeowners, the rights the Association seeks to protect are germane to the purpose of the group.  We conclude the Association has standing to seek the writ of certiorari.

### B.  The Hearing

Iowa Code chapter 357H (2011) provides a procedure by which rural improvement zones may be created in counties "with a private lake development" and with populations below a certain threshold.  Section 357H.1 requires the county board of supervisors to create such a zone upon receipt of a petition described in section 357H.2 and after a determination the area requires improvements.[1]  On the petition of twenty-five percent of residents, section

---

[1] Iowa Code section 357H.1 states, in relevant part:
> The board of supervisors of a county with less than twenty thousand residents . . . and with a private lake development shall

357H.2 requires the board set a hearing, "if the assessed valuation of the property owned by the petitioners represents at least twenty-five percent of the total assessed value of the proposed zone." Iowa Code § 357H.2(1). Upon receipt of the petition, the board has thirty days to hold a public hearing. *Id.* § 357H.3. During the hearing, the board "may consider the boundaries of a proposed rural improvement zone" and "for that purpose may amend the petition and change the boundaries of the proposed zone." *Id.* § 357H.4.[2] The board has ten days after the hearing to establish the zone by resolution or deny the petition. *Id.*

The petition in this matter described the boundaries of the proposed zone and stated it was presented on behalf of at least twenty-five percent of the residents and represented owners of at least twenty-five percent of the total assessed value of the proposed zone. It also asserted the proposed zone included approximately 250 families. After receiving the petition, the Board set and held a public hearing.

---

designate an area surrounding the lake, if it is an unincorporated area of the county, a rural improvement zone upon receipt of a petition pursuant to section 357H.2, and upon the board's determination that the area is in need of improvements.

[2] Iowa Code section 357H.4 "Hearing on petition—action by board," states:

At the public hearing . . . the board may consider the boundaries of a proposed rural improvement zone, whether the boundaries shall be as described in the petition or otherwise, and for that purpose may amend the petition and change the boundaries of the proposed zone as stated in the petition. The board may adjust the boundaries of a proposed zone as need to exclude land that has no reasonable likelihood of benefit from inclusion in a rural improvement zone. However, the boundaries of a proposed zone shall not be changed to incorporate property which is not included in the original petition.

Within ten days after the hearing, the board shall establish the rural improvement zone by resolution or disallow the petition.

The discussion at the hearing centered on two points. Through certain representatives, the signatories to the petition presented evidence concerning the need for improvements within the proposed zone, specifically concerning erosion and silting, and other citizens spoke on the impact the zone would have on the county's tax receipts. Reservations were expressed by the Board as to how the zone would impact county services and the bonding capacity of the local school district. At no time during the hearing was information presented concerning the requirements of section 357H.2 (petition for public hearing), nor did the Board question the legitimacy of the petition.

The Board's decision denied the petition for two reasons. First, the Board decided the petition was inadequate. Second, the Board decided no improvement was necessary in the given area because, on a cost-benefit analysis, approving the zone would harm the financial standing of the county with little improvement to the zone. The Board went on to sharply criticize chapter 357H as written and to interpret the chapter in a way the Board found preferential to its revenue concerns.

In granting the writ of certiorari, the district court found the Board could not reexamine the sufficiency of the petition once the hearing was held. On appeal, the Board argues the statute does not preclude the Board from making a determination on the sufficiency of the petition during the hearing itself.

This issue is one of statutory construction. Unlike a case where we are called upon to interpret specific words of the statute, in this instance we are required to consider the meaning of a number of statutory provisions spread

across a chapter. The goal in statutory construction is to give meaning to the intent of the legislature in crafting the statute. *Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 309 (Iowa 2007). No part of the statute is to be considered in isolation. *In re Detention of Huss*, 688 N.W.2d 58, 66 (Iowa 2004). As a part of this process, we must consider the context of any challenged provision to achieve consistency. *Iowa Ass'n of Sch. Bds.*, 739 N.W.2d at 309. We also attempt to consider the law as a whole so as to harmonize the section in question with other sections on the same subject. *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 811 (Iowa 2011). When considering connected statutes, we must consider them together as they relate to one another. *Olson v. Iowa Dist. Ct.*, 55 N.W.2d 339, 340 (Iowa 1952). Our reading of related and connected statutes should be harmonious. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980).

Sections 357H.1 through 357H.4 are interconnected. Each section specifically relates to the preceding section, creating a complete procedure for the consideration and establishment of rural improvement zones. Section 357H.2 establishes the requirements for the petition, and section 357H.3 requires the hearing be held within thirty days. Section 357H.4 describes the proper scope of the hearing required by section 357H.3. Read in conjunction, a board is provided with a ten-day period during which it can consider whether the petition has satisfied section 357H.2.[3] Thereafter, the sufficiency of the petition is not a

---

[3] Section 357H.3 requires the hearing be held within thirty days; however, notice must be published at least twenty days before the hearing is held. *See* Iowa Code § 331.305.

part of the carefully proscribed issues a board may consider during the hearing. *See* Iowa Code § 357H.4. For example, during the hearing, a board is granted the power to amend the petition in certain specific ways; however, nothing in the chapter allows a board to call a hearing for the purpose of determining the sufficiency of the petition itself.

In this case having called a hearing under section 257H.2, the only type of hearing the Board was empowered to call under chapter 357H; the Board proceeded directly to a hearing on the merits of the petition. *See id.* §§ 357H.1–.4. But, it was beyond the Board's power to reconsider the sufficiency of the petition at that time. *See id.*

This interpretation avoids the element of unpredictability found in this case. The Board's interpretation of the chapter would allow a board to set a hearing for the purpose of determining whether an improvement is needed, hold the hearing on the merits, and then confound the petitioners by deciding, after the hearing on the merits and without discussion, that the hearing itself should not have occurred. We find nothing in the chapter to evidence a legislative intent to create such inefficiencies. Rather, under our statutory scheme, a board determines the sufficiency of the petition by its actions of publishing notice of, and then holding, a public hearing. Accordingly, the Board herein had no authority to review the sufficiency of the petition after the hearing had been held.

---

The effect of the publication requirement is a ten-day period between receipt of the petition and publication of notice.

### C. Denial of the Petition

The Board began the discussion of its reasons for disallowing the proposed zone by stating, "[t]he proposed [zone] would have a critical long term impact on the taxes which would otherwise be available for school and local governments." A lengthy discussion followed concerning how the proposed zone would impact county tax coffers. The Board then explained in detail its interpretation of chapter 357H, which it read as including a cost-benefit analysis. The district court found error in the Board's decision to reject the petition by considering matters outside the scope of chapter 357H. The district court determined the Board's reliance on the overall financial health of the county was improper.

Section 357H.1 requires a board to create a rural improvement zone, upon receipt of a 357H.2 petition, "and upon the board's determination that the area is in need of improvements." *Id.* § 357H.1(1). The term "improvements" is defined to include dredging and erosion control measures, the types of improvements sought by the Association. *Id.* § 357H.1(2)(b). Not defined is the term "need." As previously explained, section 357H.4 gives a board the power to establish the boundaries of the proposed zone but does not include any factor other than the need for improvements.

The Board claims these sections to give it discretion to engage in a cost-benefit analysis, considering the need for the improvements in light of the impact on the county as a whole. We disagree. The chapter directs a board to establish the zone if the *area* is in need of improvements. *Id.* § 357H.1. The

consideration is specifically and unambiguously limited to the needs of the area under consideration and does not include issues pertaining to the county as a whole.[4] The term "shall" imposes a duty upon a board to establish the zone if the area in the proposed zone is in need of the defined improvements. *See id*. § 4.1(30)(a). The Board acted improperly by considering the impact the zone would have on county finances. The language the legislature used in crafting the statute directed a county board to consider only the need for the requested improvements within the specific area at issue.

The district court's ruling granting the petition for writ of certiorari and ordering the Board to consider the Association's petition using a proper interpretation of chapter 357H is affirmed.

**AFFIRMED.**

---

[4] We are uncertain if the legislature, in drafting these statutory provisions, intended to limit the board's ability to consider the needs of the county as a whole when determining the "need" for improvements. We are also unsure whether the legislature intended to draft a statute, as presently written, that infringes upon the doctrine of county home rule, effectively limiting the county's power to protect the rights of its citizens in these matters. *See* Iowa Code § 331.301(1). Though statutory construction is an exercise in giving effect to the legislative intent, we are required to discern the legislature's intent by considering "what the legislature actually said, rather than what it should or could have said." *Stille v. Iowa Dep't of Transp.*, 646 N.W.2d 114, 116 (Iowa 2001).