**IN THE COURT OF APPEALS OF IOWA**

No. 14-1153
Filed August 19, 2015

**IN RE THE MARRIAGE OF DONNA L. SULLINS
AND RAYMOND W. SULLINS**

**Upon the Petition of**
**DONNA L. SULLINS,**
       Petitioner-Appellee,

**And Concerning**
**RAYMOND W. SULLINS,**
       Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

A former husband appeals the district court's remand decision concerning the entry of a Qualified Domestic Relations Order. **AFFIRMED AND REMANDED.**

Ray Sullins, West Des Moines, appellant pro se.

David J. Hellstern of Sullivan & Ward, P.C., West Des Moines, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

Nine years ago, our supreme court remanded this case to the district court for entry of a Qualified Domestic Relations Order (QDRO) to provide Ray Sullins with a share of the pension assets in Donna Sullins's account with the Iowa Public Employees Retirement System (IPERS). *In re Marriage of Sullins*, 715 N.W.2d 242, 255–56 (Iowa 2006). The QDRO was to direct IPERS to pay benefits to Ray under the *Benson*[1] formula, specifically

> 50% of the gross monthly or lump-sum benefit payable at the date of distribution to Donna, multiplied by the 'service factor.' The numerator of the service factor is the number of quarters covered during the marriage period of November 25, 1978 through April 30, 2004, and the denominator is Donna's total quarters of service covered by IPERS and used in calculating Donna's benefit.

*Id.*

On remand, Ray and Donna disagreed as to which IPERS benefit option should be used in the formula. Ray sought an option that would name him as a contingent annuitant so that he would continue to receive monthly benefits if Donna died before he did. Donna preferred an option that would provide a higher monthly benefit for both her as the member and Ray as the alternate payee during her lifetime. The district court directed the QDRO to incorporate Donna's preferred option, and Ray appealed. Because we conclude the district court reached an equitable resolution for both parties, we affirm. We also find Donna is entitled to appellate attorney fees.

---

[1] *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996).

## I.  Background Facts and Proceedings

The supreme court provided a full history of the parties' marriage in the original appeal.  *Sullins*, 715 N.W.2d at 246-47.  We will not repeat it here.  The following abbreviated facts will suffice for purposes of the QDRO dispute.  Donna and Ray married in 1978 and divorced in 2004.  Donna is now sixty-eight years old and Ray is now seventy.  Ray was an attorney, but lost his law license before the divorce, and now earns his living as a pallet broker.  Donna worked as a public school teacher for forty-five years, and as such, was an IPERS member.  As part of the overall property settlement, the district court divided Donna's IPERS pension based on the current value of Donna's personal contributions to the plan over the years of the marriage at the time of the divorce.  Ray argued the percentage should have been applied to the benefits payable at maturity using the *Benson* formula, rather than to Donna's contributions to the fund.  On appeal, the supreme court modified the decree to provide for a QDRO to divide Donna's future monthly IPERS benefits when received.  Ray's share is based on the following formula:

| 50% X | # of quarters Donna contributed to IPERS while married | X Monthly Benefit |
|-------|--------------------------------------------------------|-------------------|
|       | # of quarters Donna contributed before retirement covered by IPERS | |

No action was taken on the remand until August 2013 when Donna hired an attorney to draft a proposed QDRO.  Donna's attorney forwarded a proposal to Ray, who continued to request additional time to review and respond to the document.  In November 2013, Donna's attorney asked the district court to set the remand matter for hearing.

The district court held a hearing on February 11 and March 9, 2014. At the hearing, Donna offered an exhibit showing the IPERS estimate of her retirement benefits using six different options. Options four and six required designation of a contingent annuitant. Donna lobbied for option three which, according to the IPERS estimate, provided a lifetime monthly benefit of approximately $4193.05. That option did not provide a payment after Donna's death. Ray asked the court to specify in the QDRO that Donna choose option six and designate him as a contingent annuitant in the event she died before he did. He argued: "I don't like looking ahead and having absolutely nothing if she dies first under the *Benson* formula because IPERS says you are cut off." IPERS option six included four different choices as to the percentage of the monthly benefit amount the contingent annuitant would receive after the member's death: 100 percent, seventy-five percent, fifty percent, or twenty-five percent. Per Ray's suggestion of the twenty-five percent choice under option six, IPERS estimated a monthly benefit amount of approximately $4024.30.

The district court concluded the QDRO should be entered that was "consistent with both the *Benson* formula and Donna's election of IPERS Option 3." Ray challenges that conclusion on appeal.

## II. Standard of Review

We review the entry of a QDRO de novo, as the proceedings are tried in equity. *In re Marriage of Veit*, 797 N.W.2d 562, 564 (Iowa 2011).

## III. Analysis

Ray contends the district court erred in not requiring the QDRO to mandate an IPERS option that would designate him as a contingent annuitant. He cites *In re Marriage of Duggan*, 659 N.W.2d 556, 560 (Iowa 2003) for his position that "only by giving him survivorship rights can it be ensured that he will receive what has been awarded to him."[2]

Donna argues the district court was without authority under the supreme court's remand to consider Ray's request for a "death benefit."[3]  For her position concerning the remand limitations, Donna relies on *In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000).[4]  She also claims Ray did not preserve his request

---

[2] We do not believe *Duggan* mandates the result sought by Ray.  In *Duggan*, the supreme court found a nonpensioner spouse was entitled to survivorship rights for the first ten years of the pensioner spouse's retirement, but explained: "the circumstances under which that designation should occur depend on the facts of each case and whether the allowance of survivorship rights effectuates an equitable distribution of the parties' assets."  *Duggan*, 659 N.W.2d at 560.  Moreover, *Duggan* did not discuss whether the survivorship designation came at a cost to the pensioner spouse.

[3] Donna sometimes refers to Ray's request to be named as a contingent annuitant as seeking a "death benefit."  But these terms are not interchangeable for IPERS purposes.

> A beneficiary may receive a death benefit when a Member dies, but the monthly pension payment amount a Member receives is based only on their single life expectancy and any lump-sum death benefit payable. A monthly pension payment with a contingent annuitant option is based on the life expectancy of two people. If a Member predeceases their contingent annuitant, the contingent annuitant will continue to receive monthly payments at 25, 50, 75 or 100% of what the Member received monthly, for their lifetime. Once the contingent annuitant passes away, all payments stop.

*See* IPERS QDRO Instruction Packet p. 25 *available at* https://www.ipers.org/members/divorce (last visited July 30, 2015).

[4] We do not find *Davis* controlling.  *Davis* focuses on Iowa Code section 411.1(19) (2013), which provides that a former spouse of a retired police officer or firefighter is entitled to surviving spouse benefits only if the dissolution decree grants the former spouse such benefits.  *See* 608 N.W.2d at 769.  Donna does not argue that Iowa Code chapter 97B governing IPERS contains a comparable provision.

to be a contingent annuitant because he did not make it during the earlier proceedings, only following the remand.

Ray responds that Donna did not object to the district court's consideration of the various IPERS options during the remand proceedings and did not argue that his request to be a contingent annuitant was either waived or outside the scope of the supreme court's remand order.

Assuming without deciding that Ray's request to be a contingent annuitant was within the scope of the remand order and preserved, we conclude the district court's decision achieved equity.

The district court gravitated to the IPERS option which maximized the monthly payout to both parties from the date of Donna's retirement. The monthly benefit to be divided under the *Benson* formula was $4193.05 under Donna's proposal without any contingent annuity and $4024.30 under Ray's proposal naming him as a contingent annuitant. The district picked the first amount for two reasons: (1) that option best reflected the intent of the original decree, and (2) that option was consistent with the evidence offered at the remand hearing concerning the parties' respective life expectancies. The court was not persuaded that Ray should be named as a contingent annuitant at the expense of the higher monthly benefit under Donna's option:

> The court is unconvinced that reducing the parties' respective monthly payouts now, in order to guarantee Ray a lifetime monthly benefit in the unlikely event that he outlives Donna, accomplishes equity between the parties and/or preserves the intent of the original trial court decree any more than simply maximizing the monthly payouts to the parties.
>
> The court believes it is preferable to base its decision on probable rather than possible outcomes. In this instance, Donna

will probably outlive Ray so the court concludes maximizing their respective monthly benefits now is the best way to ensure that each party actually receives his/her fair share of Donna's IPERS account, as computed by the *Benson* formula.

Ray criticizes both rationales advanced in the district court's remand order. He contends no guidance can be taken from the intent of the original decree because the district court's division of the IPERS account was modified by the supreme court in the first appeal. He also attacks the weak factual underpinnings for the court's conclusion that Donna would "probably" outlive him. Ray testified Donna "has got great genes" and has family members who lived into their eighties. He added: "even without the genetic observations, actuarially, pure numbers, she outlives me." But he also testified he knew "nothing of Donna's health."

On the first point, we believe the district court was spot-on in striving to effectuate the intent of the original decree on the question of awarding survivorship benefits. *See In re Marriage of Morris*, 810 N.W.2d 880, 886–87 (Iowa 2012). In *Morris*, our supreme court did not adopt "a default rule by holding that a decree dividing retirement benefits includes survivorship benefits" nor did it refuse "to allow postdissolution orders awarding a former spouse survivorship rights when the decree [did] not expressly contemplate the survivorship benefit." *Id.* at 886 (collecting cases from other jurisdictions taking varied approaches). Instead it remanded for the district court to interpret the intent of the original decree—the same process applied here. *See id.*

In this case, although the supreme court chose a different method for dividing Donna's IPERS pension than the district court issuing the original

decree, the overall intent of the original decree sheds light on the ambiguity of the survivorship benefit question. *See id.* (noting that "provisions of the decree are presumably interrelated"). Neither the original nor the modified decree addresses survivorship benefits. The original decree crafted an equitable division of the IPERS account according to the length of the marriage. The decree made observations about the relative incomes of Donna and Ray, finding Donna's earnings as a school teacher were "limited" and would "not vary dramatically in the foreseeable future"—while "it was obvious Ray has substantial income" from his pallet business. To the extent any intent can be inferred from the decree, it would be that the decretal court did not desire to perpetuate an ongoing financial entanglement between the parties, by stating: "Ray shall not receive any additional funds from Donna's IPERS account from this day forward." Requiring Donna to name Ray as a contingent annuitant would be inconsistent with the finality desired by the decree.

The supreme court's modification of the IPERS distribution recognized the present value of Donna's plan was more than the present value of her contributions and dividing the present value without actuarial evidence was inequitable. *Sullins*, 715 N.W.2d at 249. But the supreme court did not suggest that dividing the pension benefits when they matured entitled Ray to have Donna accept a reduced monthly payment to insure that he would continue to receive benefits after her death. We find the district court's rejection of the survivorship annuity did not clash with the intent of the original decree or the remand order from the supreme court.

On the second point, we recognize no true actuarial evidence was presented at the remand hearing concerning the life expectancies of Donna and Ray. Ray's anecdotal reference to Donna's favorable genetics is not a strong basis for concluding that Donna will "probably outlive" Ray. But on the flipside, Ray did not present any compelling evidence that he is in danger of forfeiting his marital share of Donna's pension benefits because of a high risk of her untimely death.

Donna argues that because she and Ray are on equal footing regarding their financial condition in retirement, Ray cannot show he is entitled to survivorship benefits when the act of designating him as a contingent annuitant would lower both parties' monthly IPERS benefit. We agree with Donna's argument. We conclude the district court reached an equitable resolution by directing that the QDRO be consistent with the *Benson* formula and Donna's election of IPERS option three.

Lastly, Donna requests appellate attorney fees. An award of appellate attorney fees is discretionary. *Davis*, 608 N.W.2d at 773. We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In this case, Donna asserts she was planning to retire from teaching soon, has a limited budget, and postponed her retirement to answer Ray's appeal. Moreover, Ray represented himself and did not have attorney fees. *See Sullins*, 715 N.W.2d at 255 (noting self-representation as permissible factor in considering award of attorney fees). In light of these

circumstances, we exercise our discretion to award Donna appellate attorney fees. But because Donna has not provided an affidavit of attorney fees with documentation to support her request, we remand to the district court to enter judgment against Ray in a reasonable amount. *See, e.g., Markey v. Carney,* 705 N.W.2d 13, 26 (Iowa 2005) ("[U]nder our current practice, the issue of appellate attorney fees is frequently determined in the first instance in the district court because of the necessity for making a record." (quoting *Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.,* 545 N.W.2d 526, 528 (Iowa 1996))).

We order Ray to pay the costs of the appeal.

**AFFIRMED AND REMANDED.**